J-A21001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                              : PENNSYLVANIA
                                                              :
             v.                         :
                                                              :
                                                              :
                                                              :
JERMAIN ORLANDO BURNETT            :
                                                              :
          Appellant                      : No. 76 MDA 2025

Appeal from the Judgment of Sentence Entered December 18, 2024
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0002363-2022

BEFORE: PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:　　　**FILED: SEPTEMBER 24, 2025**

Jermain Orlando Burnett appeals from the judgment of sentence of an aggregate term of 5 and ½ to 12 years' incarceration on the charges of firearms not to be carried without a license and manufacture, delivery, or possession with intent to manufacture or deliver. On appeal, Burnett argues the warrant used to search his vehicle was not supported by probable cause. We affirm.

On May 2, 2022, following a traffic stop, Burnett was charged by criminal complaint with the offenses of firearms not to be carried without a license, manufacture, delivery, or possession with intent to manufacture or deliver,

_____

[*] Former Justice specially assigned to the Superior Court.

person not to possess/use firearms-fugitive, marijuana-small amount personal use, and use of drug paraphernalia.[1]

Burnett subsequently filed an omnibus pre-trial motion to suppress physical evidence, arguing the police lacked probable cause to execute a search warrant for his vehicle. On April 13, 2023, a suppression hearing was held. The suppression court made the following findings of fact based on the evidence presented at the hearing:

> Philip Pronick was working as a trooper with the Pennsylvania State Police on May 2, 2022. At that time, he was working a 6:00 a.m. to 3:00 p.m. shift when he encountered [Burnett]. Trooper Pronick testified that he was traveling on the Interstate 83 off ramp of I 81 at 10:30 a.m. when he came across a disabled vehicle along the curb with a tow truck. Trooper Pronick was driving a marked patrol vehicle and was in full uniform. The patrol vehicle was equipped with an MVR recording system. Prior to Trooper Pronick arriving, another Trooper, Ross Griffin, was with the disabled vehicle and had set up flares. The car was disabled due to two flat tires on the left-hand side. Because of the location of the car, Trooper Pronick remained with the vehicle with the overhead lights of his patrol vehicle activated to alert drivers.
>
> Trooper Pronick did an inquiry of the registration, and the owner came back as Jermain Burnett. An arrest warrant for possession with the intent to deliver from Maryland came up for an individual named Christopher Henry. Listed as aliases for the warrant were Jermain Burnett, Jermain O. Burnett, or Jermain Orlando Burnett. Trooper Pronick called for a backup unit due to the felony arrest warrant out of Maryland. Tropper Pronick learned from the tow truck operator that [Burnett] had contacted him and paid him to tow the car to their shop. Trooper Pronick advised the tow truck operator that he could begin to load the vehicle but could not leave with it yet. It was Trooper Pronick's position that the tow truck

---

[1] 18 Pa.C.S.A. § 6106(a)(1), 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 6105(c)(1), 35 P.S. § 780-113 (a)(31), 35 P.S. § 780-113 (a)(32).

driver was not free to leave with the vehicle at that point because he was conducting an investigation.

Trooper Pronick questioned [Burnett] about $3,000 that was found on his person and whether he had a social security number. [Burnett] was placed under arrest, and a search of his person revealed a large sum of money wrapped in a rubber band inside of a gallon-sized bag, two packets of cigarettes, a knife, two cellphones, a wallet, and some miscellaneous belongings. The wallet contained three (3) credit cards with different names, of which [Burnett] could not recall any of the names. A small marijuana cigarette was found in one of the cigarette packets. Trooper Pronick asked [Burnett] whether he would consent to a search of his vehicle, and [Burnett] denied consent. Trooper Pronick had [Burnett]'s vehicle towed to a secure lot so that he could apply for a search warrant. Trooper Pronick decided to obtain a search warrant but also detailed PSP's inventory policy that would have governed his actions had he not obtained a warrant.

A search of the vehicle was conducted following issuance of a search warrant, which revealed a firearm located underneath the passenger's seat wrapped in a white towel, and 397 fentanyl pills were located in the rear center console, which were partially sticking out of the rear console. Trooper Pronick explained that the pills were found inside a sock that was sticking up from the backseat center console.

Trial Court Opinion, 4/13/23, at 1-3 (record citations omitted). Following consideration of briefs submitted by the parties in lieu of argument, the court denied the motion to suppress, concluding the search warrant was properly supported by probable cause.

On September 26, 2024, following trial, a jury found Burnett guilty on the charges of firearms not to be carried without a license and manufacture, delivery, or possession with intent to manufacture or deliver. Sentencing was deferred for preparation of a presentence investigation report.

On December 18, 2024, the trial court sentenced Burnett to 1 to 2 years' incarceration for firearms not to be carried without a license, and a consecutive terms of 4 ½ to 10 years' incarceration for possession with intent to manufacture or deliver. This timely appeal followed.

On appeal, Burnett argues the trial court erred in determining the warrant used to justify the search of Burnett's vehicle was supported by probable cause. Burnett challenges the suppression court's denial of his omnibus pre-trial motion to suppress evidence.

> Our standard of review of a trial court's ruling on a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the facts found by the trial court so long as they are supported by the record, but we review its legal conclusions de novo. The trial court has sole authority to pass on the credibility of witnesses and the weight to be given to their testimony. Our scope of review is limited to the record developed at the suppression hearing, considering the evidence presented by the Commonwealth as the prevailing party and any uncontradicted evidence presented by the defendant.

*Commonwealth v. Rivera*, 316 A.3d 1026, 1031 (Pa. Super. 2024) (quotation marks and citations omitted).

In his motion to suppress, Burnett argued there was no evidence to support a search of the vehicle in connection to any crime when a search of Burnett's person revealed the source of the initial odor of marijuana, and that the police had not stated they smelled the odor of marijuana emanating from the vehicle. *See* Omnibus Pre-Trial Motion, 10/26/22, at 4. On this basis, Burnett argued there was no probable cause to search the vehicle. *See id.* On

appeal, Burnett maintains the record does not support the trial court's conclusion that the warrant was supported by probable cause.

Both Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution require search warrants to be supported by probable cause. *See Commonwealth v. Jones*, 988 A.2d 649, 655 (Pa. 2010). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Johnson*, 42 A.3d 1017, 1031 (Pa. 2012) (citation omitted).

"[T]he United States Supreme Court established a 'totality of the circumstances' test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause." *Jones*, 988 A.2d at 656. The Pennsylvania Supreme Court adopted this test "for purposes of making and reviewing probable cause determinations under Article 1, Section 8." *Id*. Therefore, under the totality of the circumstances test, "the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Torres*, 764 A.2d 532, 537 (Pa. 2001) (citation and internal quotation marks omitted).

Here, Burnett's claim that the search warrant lacked probable cause is meritless. The facts set forth in the affidavit of probable cause were sufficient for police to obtain a search warrant for Burnett's vehicle. **See Jones**, 988 A.2d at 656. In the affidavit, the trooper thoroughly described his prior experience and knowledge related to drug investigations. The affidavit indicated that Burnett was the registered owner of the vehicle he was standing beside; he had an active warrant from another state for possession with intent to deliver, possession of marijuana, and larceny; he had approximately $3,000 in cash on him; he illegally possessed marijuana in the form of a blunt; and finally, he had numerous cards on him that did not belong to him, and for which he could not identify the names. **See** Commonwealth's Exhibit 1, at 3-4. The items he possessed directly tracked the charges on the Maryland warrant. Based on the totality of the circumstances just described, we cannot find the suppression court erred in finding there was probable cause to believe other contraband or evidence related to the contraband found on his person would be in his car. The trooper did not conduct a warrantless search and properly obtained a warrant supported by ample probable cause. As such, Burnett is not entitled to relief.[2]

_____

[2] Burnett alternatively argued that the search of his vehicle could not be saved by the inevitable discovery doctrine. **See** Appellant's Brief, at 27-42. Due to our disposition, we need not address the alternative argument of whether or not the items in the car would have been subject to inevitable discovery pursuant to an inventory search.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>9/24/2025</u>